# 98 DTA 139

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
PANEL I**

EVELYN FELICIANO LOPEZ
Recurrida

v.

DEPARTAMENTO DE LA FAMILIA
Recurrente

Núm. KLAA-96-00362

San Juan, Puerto Rico, a 26 de marzo de 1998

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Pesante Martínez

Colón Birriel, Juez Ponente

**I**

El 18 de abril de 1996, la apelante-recurrente Departamento de la Familia, Administración de Rehabilitación Vocacional *("Departamento de la Familia")* presentó ante el Tribunal de Primera Instancia, Sala Superior de Caguas, *"Solicitud de Revisión",* solicitando la revocación de una Resolución emitida el 5 de marzo de 1996, por la Junta de Apelaciones del Departamento de la Familia *("Junta")* en el caso de Evelyn Feliciano López, apelante. ■■ Mediante el dictamen en cuestión, la Junta revocó la determinación del Programa de Rehabilitación Vocacional de dicho Departamento, que denegó la otorgación retroactiva de ciertos beneficios a la recurrida Evelyn Feliciano López *("Feliciano López"),* y *"ordena determinar y otorgar beneficios retroactivos a la parte apelante".*

El 18 de marzo de 1996, el Departamento de la Familia solicitó reconsideración ante la Junta. El 21 de marzo de 1995, por su parte, la Junta declaró *"No Ha Lugar"* la reconsideración solicitada.

Así las cosas, Feliciano López presentó el 18 de abril de 1996, su solicitud de revisión según hemos indicado. Le imputa a la Junta cometer los siguientes errores:

*"1. Erró la honorable Junta de Apelaciones al ordenar beneficios retroactivos en violación a la Ley Federal de Rehabilitación y la reglamentación aplicable.*

*2. Erró la honorable Junta al determinar implícitamente que la apelante sometió su solicitud desde septiembre de 1994 y que desde esa fecha era elegible y que al no hacerse la determinación de elegibilidad en 60 días la consecuencia directa era la elegibilidad de la cliente, cuando de los récords médicos y de la Comunicación 92-100 surge claramente lo contrario.*

*3. Erró la honorable Junta de Apelaciones al ordenar pago de servicios que no fueron producto de una evolución del proceso de rehabilitación."*

Así las cosas, mediante *"Resolución y Orden"* emitida por el foro de instancia el 27 de junio de 1996, y de conformidad a lo dispuesto en el Artículo 9.004(a) de la Ley de la Judicatura de 1954, según enmendada, 4 L.P.R.A. sec. 23f, se trasladó el recurso a este foro para su resolución. Al momento del traslado, quedaba pendiente ante el foro de instancia la mostración de causa de Feliciano López, por la cual no se debía revocar la decisión de la Junta.

No obstante lo anterior, mediante nuestra resolución de 26 de febrero de 1997, le concedimos a Feliciano López el término de quince (15) días a los mismos efectos anteriores. Transcurrió el término concedido y no tuvimos comunicación de Feliciano López, por lo que le concedimos a ésta mediante nuestra resolución de 2 de junio de 1997 un término improrrogable de cinco (5) días laborables para cumplir con lo ordenado.

El 26 de junio de 1997, Feliciano López compareció representada por la Oficina del Procurador de las Personas con Impedimentos en oposición a la expedición del recurso. Con el beneficio de las comparecencias, procedemos a resolver. Veamos.

**II**

Surge de los autos originales, que en el mes de mayo de 1994, Feliciano López solicitó los servicios del Programa de Rehabilitación Vocacional del entonces Departamento de Servicios Sociales, hoy Departamento de la Familia, con el propósito de que se le pagaran los costos para continuar estudios post graduados y obtener una maestría en inglés. Fue referida del Centro de Salud Mental de Caguas con un diagnóstico de trastorno de ansiedad y rasgos depresivos. ■■ Trabajó durante diecisiete (17) años como técnica en el Departamento de la Familia, y tuvo que acudir al Fondo del Seguro del Estado por una condición nerviosa. Su caso no fue relacionado con el empleo, y apeló de la decisión del Fondo a la Comisión Industrial.

En agosto de 1994, tres (3) meses después de haber solicitado los servicios del Programa de Rehabilitación Vocacional, Feliciano López se matriculó por su cuenta en el Colegio Universitario del

Turabo a los fines de continuar sus estudios post graduados y obtener una maestría en inglés.

Las *"Guías y Procedimientos a Seguirse Para el Servicio de Adiestramiento a Nivel de Estudios Post Graduados Para Clientes Bajo los Auspicios del Programa de Rehabilitación Vocacional"*, establecidas en la Comunicación Normativa 92-100 del Programa de Rehabilitación Vocacional, ■ disponen entre otras cosas, como requisito de elegibilidad, que el cliente tendrá que estar severamente incapacitado, de acuerdo a la definición establecida en 29 USCA sec. 706 (15)(A), según enmendada por la Ley Pública 99-506 de octubre 21 de 1986; 34 CFR 361.1 (c)(2). Entre los clientes clasificados como severamente incapacitados se considerarán aquellos con las limitaciones físicas o mentales más severas que constituyan o interfieran con la ejecución de tareas a nivel funcional. Por ello, la consejera del programa le solicitó a Feliciano López evidencia médica para poder determinar su elegibilidad.

El 22 de septiembre de 1994, el facultativo médico del Programa de Rehabilitación Vocacional preparó un *"Special Medical Report"*, referente a Feliciano López en el que se informó un diagnóstico de taquicardia y sinusitis. ■ El 4 de noviembre de 1994, se preparó un *"Cardiac Disability Medical Report"*. ■ Se reflejaba en el apartado *"Diagnosis"* *"Paroxismal Atrial Tachicardia"*. Dejándose en blanco el apartado relativo a *"working conditions to be avoided"*, es decir, en dicho apartado no se reflejó ninguna condición de trabajo a ser evitada.

El 14 de diciembre de 1994, la consejera recibe otra Hoja de Referido del Centro de Salud Mental de Caguas y solicita una consulta médica al nivel central del Programa de Rehabilitación Vocacional para constatar que Feliciano López llenara el requisito de *"severamente incapacitada"* que se establece en 29 USCA sec. 706(15)(A), *supra*. ■ En la Hoja de Referido, aparece en el apartado concerniente a *"Diagnóstico (DSM III-R) Eje I (Síndrome Clínico): Trastorno Ansiedad con rasgos depresivos"* y en el *"Eje III (Desorden Físico): Taquicardia Atrial Paroxismal"*.

Por recomendación del consultor siquiátrico del Programa de Rehabilitación Vocacional, Dr. Félix Maldonado se sometió a Feliciano López a evaluaciones siquiátricas y cardiológicas. ■ El 24 de enero de 1995, se recibieron los informes de la evaluación siquiátrica, efectuada por el Dr. Guillermo Bustelo Méndez (psiquiatra) y el Dr. José R. Del Río (médico que interpretó la prueba *"Holter"*). ■

El 24 de abril de 1995, la consejera vocacional hace una consulta a nivel central, por tener dudas sobre la elegibilidad de Feliciano López, a tenor con los requisitos establecidos en la Comunicación Normativa 92-100 *"Guías y Procedimientos a Nivel de Estudios Post Graduados para Clientes bajo los Auspicios del Programa de Rehabilitación Vocacional"*. Solicitó se determinara *"si existe trastorno mental orgánico o se podría considerar el caso para pagos de estudios post graduados por tener una combinación de incapacidades que constituyen una limitación funcional comparable"*. ■

El 10 de julio de 1995, a Feliciano López le fue aprobado el Programa Individualizado Escrito de Rehabilitación (PIER) inicial con el objetivo vocacional de Profesora de Inglés Universitaria con los servicios programados de estudios post graduados, manutención, transportación, libros, consejería y seguimiento. ■

En julio de 1995, se certifica a Feliciano López elegible y se le proveyeron los servicios solicitados. El 13 de ese mes solicitó beneficios retroactivos de septiembre de 1994 a julio de 1995, por razón de que el Programa de Rehabilitación Vocacional se tardó catorce meses y medio (14 1/2) para determinar su elegibilidad.

El 8 de septiembre de 1995, el Programa de Rehabilitación Vocacional le notificó por escrito a Feliciano López su decisión de denegarle los beneficios retroactivos solicitados. El Programa se fundamentó en que no podía pagar retroactivo dichos beneficios en los que resultó elegible con efectividad al mes de agosto de 1995.

Inconforme, con la decisión Feliciano López presentó su apelación ante la Junta el 14 de septiembre de 1995. No obstante a que ésta no compareció a la vista, la Junta revocó la determinación del Programa de Rehabilitación Vocacional y ordenó determinar y otorgar beneficios retroactivos bajo el fundamento de que el Programa actuó incorrectamente al no determinar elegibilidad en el término de sesenta (60) días dispuesto por la Ley de Rehabilitación Vocacional, según enmendada.

## III

Comenzaremos en primer lugar, estableciendo el alcance de la revisión judicial. Veamos.

Como es sabido, la revisión judicial suele circunscribirse a determinar: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hechos efectuadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo visto en su totalidad; y (3) si las conclusiones de derecho fueron correctas. Ley Núm. 170 de 12 de agosto de 1988, según enmendada, Sec. 4.5, 3 L.P.R.A. sec. 2175 (1992); *Pablo G. Rivera Rentas v. A & C Development Corp.,* __ D.P.R. __ (1997), **97 J.T.S. 143.**

De ordinario, los tribunales miran con deferencia tanto las determinaciones fácticas como las interpretaciones de la ley cuya administración le fue encomendada por la Legislatura, efectuadas por las agencias administrativas. En este último caso se presume que la agencia posee un conocimiento especializado en los asuntos encomendádoles por el legislador, por lo que nuestra función revisora se limita a determinar si la interpretación o actuación administrativa fue razonable, a la luz de las pautas trazadas por el legislador. *Pablo G. Rivera Rentas v. A & C Development Corp., supra.*

Es norma reiterada que las determinaciones sobre cuestiones de hechos tomada en la esfera administrativa gozan de la misma presunción de corrección y validez que aquellas celebradas ante el foro judicial. En consideración a ello, cuando se acude a este tribunal para que se revise una determinación administrativa, se ha reconocido una norma de deferencia que sólo cede ante una fundamentada alegación de actuación arbitraria, ilegal o irrazonable, por parte de la agencia. *Fuertes v. A.R.P.E.,* __ D.P.R. __ (1993), **93 J.T.S. 165;** *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692 (1975). La intervención judicial con tales determinaciones sólo procede cuando éstas no se encuentran sostenidas por prueba sustancial ante la totalidad del récord administrativo. Para que un tribunal pueda concluir que la evidencia en el expediente administrativo no es sustancial, es necesario que el afectado demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, al punto de que no pueda resolverse concienzudamente a base de la prueba presentada que la evidencia sea sustancial y que demuestre claramente que la decisión del organismo no está justificada en una evaluación justa del peso de la prueba que tuvo ante su consideración. *Metropolitana, S.E. v. A.R.P.E.,* __ D.P.R. __ (1995), **95 J.T.S. 39.**

No obstante, aunque de ordinario la interpretación administrativa de un estatuto por el organismo encargado de velar por su cumplimiento merece gran respeto y deferencia por los tribunales, esto no significa que tenga credenciales de inmunidad frente a la revisión judicial. *Alvarez Cintrón v. Junta de Directores Cond. Villa Caparra Executive,* __ D.P.R. __ (1996), **96 J.T.S. 70,** pág. 1126.

Por otro lado, el Programa de Rehabilitación Vocacional fue creado mediante la Ley Núm. 414 de 13 de mayo de 1947, conocida como la Ley de Rehabilitación Vocacional de Puerto Rico, 18 L.P.R.A., Secs. 1046 a 1061. El programa está orientado hacia la rehabilitación de personas con impedimentos físicos y provee a los beneficiarios servicios gratuitos de adiestramiento, orientación y medios de empleo.

La Ley Federal *"Vocational Rehabilitation Act"* de 1922, según enmendada por el Vocational Rehabilitation Act de 1973, enmendado posteriormente en el 1992 por la Ley Pública 102-569, 29 USCA secs. 701 *et seq.,* tiene como propósito, entre otros desarrollar programas coordinados y efectivos de rehabilitación personal, vocacional y de vida independiente a personas con varios tipos de impedimentos, para que por medio de servicios gratuitos de adiestramiento y orientación, sus beneficiarios puedan lograr el objetivo de ser ciudadanos independientes y útiles que no dependan del gobierno ni de la caridad pública.

La ley establece programas para que los estados puedan implantar planes de rehabilitación vocacional para brindar servicios a personas incapacitadas, 29 USCA 722. Estos programas deben ser acordes con la Ley Federal y los Reglamentos. *Florida Dept. of Health & Rehabilitation v. Joseph Califano,* 449 F. Supp. 274 (1978). El gobierno de Puerto Rico es recipiente de esos fondos federales.

El Programa de Rehabilitación Vocacional de Puerto Rico fue creado por la Ley Núm. 414 de 13

de mayo de 1947, conocida como la Ley de Rehabilitación Vocacional de Puerto Rico, 18 L.P.R.A. secs. 1046 a 1061. Esta ley estableció la División de Rehabilitación Vocacional, en el Departamento de Servicios Sociales, 18 L.P.R.A. sec. 1050. El Departamento de Servicios Sociales fue sustituído por el Departamento de la Familia a tenor con el Plan de Reorganización Núm. 1 del Gobierno de 27 de julio de 1995.

Es responsabilidad del Departamento de la Familia, entre otros, el operar un Programa de Rehabilitación Vocacional que prepare a los individuos con impedimentos de forma eficiente, eficaz y coordinada hacia los propósitos de independencia, autosuficiencia económica y su integración en la sociedad.

Se establece en la subsección (5)(A) de la sección 722, 29 USCA sec. 722(5)(A), según enmendada, que la unidad o agencia estatal que administra los fondos federales para la rehabilitación vocacional, tiene que determinar en un período de tiempo razonable, el que no ha de exceder de sesenta (60) días luego de que el solicitante ha sometido su solicitud, si éste es elegible para recibir los servicios de rehabilitación vocacional. El estatuto provee solamente dos circunstancias o razones para no hacerse la elegibilidad en sesenta (60) días. La primera es cuando la agencia le haya notificado al solicitante que circunstancias excepcionales o imprevistas fuera del control de la agencia, le impiden completar la determinación o elegibilidad en el tiempo establecido, en cuyo caso el solicitante debe consentir a la extensión de tiempo. La segunda circunstancia es cuando haya de hacerse una evaluación extendida, la que no debe de exceder del término de dieciocho (18) meses. 34 C.F.R. § 361.41 (a)(b); 34 C.F.R. § 361.42 (d)(2).

La ley y el reglamento proveen para que en el caso de una evaluación extendida se le provea al solicitante, de servicios de rehabilitación durante ese período. 29 USCA sec. 706(C) (iii) (I); 34 C.F.R. § 361.42 (d) (2).

El plan debe asegurar que la unidad estatal designada ha establecido e implementado normas para el pronto y equitativo manejo de los referidos de servicios de rehabilitación vocacional. Las normas deben de incluir parámetros de tiempo en la realización de esfuerzos bonafides de manera tal que se les informe a los solicitantes de los requisitos y obtener la información necesaria para el inicio de la evaluación y así poder determinar elegibilidad y prioridad de servicios.

Los requisitos básicos de elegibilidad requeridos en el plan estatal, enumerados en 34 C.F.R. § 361.42, (a) (1) (i) (ii) (iii) y (iv), para determinar que una persona es elegible para servicios vocacionales de rehabilitación son: (i) una determinación de que el solicitante tiene un impedimento físico o mental; (ii) una determinación de que ese impedimento constituye o resulte en un obstáculo substancial para darle empleo al solicitante; (iii) una presunción de que el solicitante se ha de beneficiar en términos de empleabilidad, de proveérsele los servicios rehabilitativos; y (iv) una determinación de que el solicitante necesita servicios vocacionales de rehabilitación para prepararse, entrar a, comprometerse en, o retener un empleo que sea consistente con sus destrezas, recursos, prioridades, habilidades, capacidades y decisión informada. 34 C.F.R. § 361.42 (a)(l)(i-iv), 29 USCA sec. 722(a).

El requisito de presunción de beneficio, enumerado bajo el número (2) en 34 C.F.R. 361.42, requiere que el plan estatal asegure que el estado designado presuma que el solicitante que llene los requisitos enumerados en (a)(1)(i) y (ii), *supra*, puede beneficiarse en términos de un empleo resultante, a menos que se demuestre, basado en evidencia clara y convincente, que el solicitante es incapaz de beneficiarse de un empleo resultante de los servicios de rehabilitación vocacional. Esta presunción se derrota sólo en casos de que el estado pueda demostrar con evidencia clara y convincente que ese individuo es incapaz de beneficiarse del programa en términos de empleabilidad. 29 USCA sec. 722 4(A); 34 C.F.R. § 361.42(a)(2).

Se considera que un individuo ha sometido una solicitud cuando éste o su representante ha completado y firmado la solicitud de la agencia, o de otro modo ha requerido servicios de la agencia; cuando ha provisto la información necesaria a la agencia para iniciar una evaluación de elegibilidad y cuando está disponible para completar el proceso evaluativo. 34 C.F.R. 361.41 (b) (2) (i-iii).

Los artículos del reglamento federal que regían en 1995, fecha en que comenzó la presente acción en la agencia administrativa, establecían el que era necesario una certificación, antes o al momento en que el programa aceptaba un individuo para beneficiarse de los servicios de rehabilitación vocacional, de que la persona satisfacía los requisitos de elegibilidad establecidos por el estatuto. 34 C.F.R. § 361.35. Esta reglamentación no está vigente actualmente. Asimismo, establecía en su sección 365.44 que se requería que hubiese una autorización escrita al momento de la concesión de servicios, aunque en situaciones de emergencia podría ser oral para luego ser confirmada de forma escrita. 34 C.F.R. § 365.44.

Se requiere, además, la confección de un Programa Individualizado Escrito de Rehabilitación (PIER) en inglés *"Written Rehabilitation Program"* tanto para los solicitantes aceptados como para aquellos que están siendo evaluados extensamente.

El objetivo del PIER es establecer las posibles metas vocacionales del solicitante, los medios y los servicios que se proveerán para conseguirlas. El solicitante debe participar y aceptar el plan desarrollado conjuntamente con su consejero. 92 USCA sec. 102 (b) (1) (A) (i).

Se debe hacer una determinación de inelegibilidad antes del inicio de un PIER. Esta debe incluir las razones para la no elegibilidad, los derechos y remedios en ley disponibles para (el individuo, la persona) y otros servicios disponibles. 299 USCA sec. 722 (a) (6); 34 C.F.R. § 361.40, 361.41 (1997).

Por su parte, Puerto Rico aprobó en su plan estatal, entre otros, las *"Guías y Procedimientos a Seguirse para el Servicio de Adiestramiento a Nivel Post Graduado para Clientes bajo los Auspicios del Programa de Rehabilitación Vocacional"* para administrar y distribuir los fondos federales concedidos.

Estas guías fueron adoptadas a tenor con la facultad que le confiere la Ley Federal 92 USCA sec. 17, y están a tono con los cambios en la política pública de la agencia a nivel estatal.

Dichas guías disponen que para cualificar para adiestramiento a nivel post-graduado el cliente debe estar severamente incapacitado, a tenor con la definición de severidad de la ley, 92 USCA sec. 7 (15), *supra*; y 34 C.F.R. § 361.1(c) 2. Guía A(1) a.

Se dispone que una combinación de incapacidades puede constituir una limitación funcional comparable a otras condiciones severas que menciona el estatuto, para ser considerada para el servicio, siempre que cada situación sea consultada y discutida con el Comité de Revisión Administrativa de Servicios de Rehabilitación Vocacional; antes de establecer compromiso alguno con el cliente.

Se requiere el establecimiento de un objetivo vocacional que surgirá de la evolución y consejería del proceso de rehabilitación. Guía, inciso 2. Sin embargo, ese objetivo o meta no se puede plasmar en un PIER hasta tanto no haya habido ese proceso de consejería y hasta tanto no se tenga evidencia de que el cliente ha sido aceptado en la institución que proveerá el adiestramiento. Guía, inciso 3.

En casos de estudios post graduados el programa obliga al cliente a solicitar y ser admitido a la institución antes de aprobarle el PIER. Además de evidencia de aceptación a la institución, el cliente ha de proveer evidencia de todo otro recurso económico con que cuenta y/o evidencia de esfuerzos realizados para procurarse medios y ayudas estudiantiles a nivel post graduados. Estos recursos habrán de aplicarse a cubrir costos del adiestramiento. Guía, inciso 4.

Procederemos, ahora, con la discusión de los tres (3) errores señalados. Por estar estrechamente relacionados, los discutiremos en conjunto. Veamos.

En esencia, la controversia a resolver en el presente caso, se circunscribe a si se deben pagar servicios retroactivos de estudio a nivel post graduados a una cliente del Programa de Rehabilitación Vocacional, que se matriculó por cuenta propia en una universidad tres (3) meses después de haber solicitado el servicio en Rehabilitación Vocacional. Veamos.

Feliciano López solicitó los servicios al Programa de Rehabilitación Vocacional en mayo de 1994. El programa supo desde el principio el objetivo de Feliciano López de estudiar a nivel post graduado su maestría en inglés. El programa nunca objetó su meta vocacional, como parte de su proceso de rehabilitación. De hecho, en julio de 1995, fue certificada elegible y le fueron pagados los últimos tres (3) semestres de su maestría. Por lo que se puede interpretar que el objetivo vocacional de ésta era adecuado y aprobado por su consejero.

En mayo de 1994, desde el momento en que Feliciano López solicitó, se le impone la obligación al programa de iniciar una evaluación y de determinar en sesenta (60) días si ésta es o no elegible. Feliciano López había sometido su solicitud según los requisitos del estatuto: había completado y firmado la solicitud; había provisto al programa con la información necesaria para iniciar la evaluación; y el programa estaba disponible para completar la evaluación de Feliciano.

En mayo de 1994, el diagnóstico de *"Trastorno de Ansiedad con Rasgos Depresivos"* que padecía Feliciano López no satisfacía el requisito de *"severamente incapacitado"* que, entre otros, exige el estatuto. Pero, tampoco el estatuto le exige que lo satisficiera, sino que el programa iniciara su evaluación y determinara en sesenta (60) días si podía ser elegible o no de acuerdo a los criterios establecidos.

Es de notar que por el hecho del programa no tener evidencia médica a su disposición, no quiere decir que la solicitante no fuera elegible, sino que el programa no estaba en condiciones de hacer la determinación. Por eso es que el estatuto exige iniciar una evaluación durante ese período y hacer la determinación correspondiente. El estatuto no exige que el cliente traiga toda la información al momento de la solicitud, sólo la necesaria para que el programa comience el proceso.

Pero el programa tuvo la evidencia necesaria cuando llegó el segundo referido de Salud Mental en septiembre de 1994 y tampoco determinó su decisión dentro de los sesenta (60) días de haberla tenido disponible. No fue sino hasta julio de 1995, diez (10) meses después que Feliciano López fue certificada elegible. Habían pasado 14 1/2 meses desde que solicitara por primera vez. Si el Departamento de la Familia estaba haciendo una *"evaluación extendida" "de facto"* también incumplió con los requisitos de la ley y el reglamento a esos efectos.

Además, el Reglamento Estatal de la agencia exige el requisito de evidencia de que el cliente ha sido admitido en la Institución que proveerá el adiestramiento. Es decir, el cliente debe solicitar a la institución. ¿Y qué se supone que ocurra si la agencia no determina elegibilidad en el tiempo requerido para ello? ¿Perdería el solicitante todo un (1) año de estudios? ¿Su vida se le detendría un (1) año? ¿Se le atrasaría un (1) año completo su objetivo vocacional con el agravante de que pudiera no ser admitido el próximo año, dado la demanda y la oferta de estudios? Al no haberse matriculado y pagado oportunamente, ¿conllevaría ello el perder su derecho a matrícula automática, tendría que volver a solicitar?

No puede ser posible que el solicitante resulte penalizado o perjudicado por el incumplimiento de procedimientos que son del absoluto control de la agencia; se incumpliría con el propósito expreso de la ley federal de operar un programa *"comprensivo, coordinado, efectivo y eficiente"* que garantice y provea rehabilitación vocacional a los clientes para que puedan lograr sus metas de independencia y utilidad futura.

El Departamento argumenta, ahora, que la clienta no satisfacía los requisitos de severidad que exige el estatuto, lo que no está en controversia. Su contención no puede prosperar, puesto que a Feliciano López se le certificó elegible para los beneficios en julio de 1995 y se le pagaron tres (3) semestres de estudios de su maestría. Lo que si está ahora en controversia, es el pago retroactivo del primer año que Feliciano López tuvo que pagar debido a la inacción del programa en decidir con premura su elegibilidad.

Si Feliciano López hubiera sido declarada inelegible en el tiempo requerido según el estatuto, no hubiese controversia alguna en cuanto a pagos retroactivos ni prospectivos se refiere. Pero la realidad es que ésta fue declarada elegible por la agencia, por lo que su contención no puede prosperar por carecer de mérito.

Por otro lado el Departamento arguye que la Junta ordenó beneficios en violación a la ley y a la reglamentación federal aplicable, que no fueron producto de una evolución del proceso de rehabilitación.

Sin embargo, fue la agencia la que no determinó elegibilidad en el tiempo dispuesto por ley. Tampoco determinó que no era elegible con evidencia clara y convincente, que era lo procedente. La agencia tampoco cumplió con los requisitos de evaluación extendida. Si no hubo un producto de evolución del proceso de rehabilitación fue porque la agencia no lo proveyó. ¿Cómo puede invocarse violación a la ley federal si la misma agencia ha incumplido desde el principio con sus disposiciones?

Los procedimientos y las decisiones administrativas tienen una presunción de regularidad y corrección que debe ser respetada, si la parte que la impugna no produce suficiente evidencia que la derrote. *Gobernador de P.R. v. Hon. Juan Aubín Cruz Manzano*, __ D.P.R. __ (1997).

Los errores no fueron cometidos.

Por los fundamentos expresados se deniega la expedición del auto solicitado y se confirma la Resolución de la Junta de Apelaciones del Departamento de la Familia del 5 de marzo de 1996 que revocó la determinación del Programa de Rehabilitación Vocacional y ordenó determinar y otorgar beneficios retroactivos a Feliciano López.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 98 DTA 139

1. Páginas 13-16 del apéndice de la Solicitud de Revisión.

2. Exhibit 3, páginas 27-28 de la Solicitud de Revisión.

3. Exhibit 14, páginas 51-54 de la Solicitud de Revisión.

4. Exhibit 5, página 30 de la Solicitud de Revisión.

5. Exhibit 6, páginas 32-33 de la Solicitud de Revisión.

6. Exhibit 7, página 34 de la Solicitud de Revisión.

7. Exhibit 9, Hoja de Referido al Psicólogo o Psiquiatra, página 37 de la Solicitud de Revisión.

8. Exhibits 10, Evaluación Psiquiátrica del Dr. Guillermo Bustelo Méndez, páginas 38-41 de la Solicitud de Revisión y Exhibit 11, Holter Interpretation, del Dr. Del Río, página 42 de dicha solicitud.

9. Exhibit 12, páginas 44-46 de la Solicitud de Revisión.

10. Exhibit 1, página 14 de la Solicitud de Revisión.